UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

KIMBERLY GONZALEZ, ET AL                     CIVIL ACTION NO. 13-cv-3005

VERSUS                                       JUDGE STAGG

GUY COOPER, ET AL                            MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Kimberly Gonzalez, Sylenda Dixon, and Renee Caldwell are school teachers who were formerly employed at an alternative school in Caddo Parish that was operated by Ombudsman Educational Services, Ltd., a subsidiary of Educational Services of America. Guy Cooper served as the administrator or principal at the school. Plaintiffs allege that they were forced to resign or were fired after they objected to Cooper's demands that they alter or change student grades and sign falsified records. Mr. Cooper and the two corporate entities (Defendants) have filed a Motion to Dismiss (Doc. 23) that attacks the three causes of action asserted in Plaintiffs' Amended Complaint (Doc. 22). For the reasons that follow, it is recommended the motion be granted in part and denied in part.

**The Allegations**

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). Plaintiffs contracted for employment as school teachers with the two corporate

defendants to work at an alternative school for students with behavioral problems.  The school is a "public school entity" located in Shreveport.  Amended Complaint, ¶¶ 10-11. Plaintiffs' duties included correctly reporting student grades in accordance with local and state guidelines, including those found in Title 28 of the Louisiana Administrative Code that govern public education entities operated within Louisiana.  ¶ 13.

Mr. Cooper was listed as the "administrator" of the school, but he essentially served as the principal or top official at the location.  Cooper, on more than one occasion, demanded that each of the Plaintiffs alter or change student grades and sign falsified records for submission to the parish school board.  When Plaintiffs objected or refused, Cooper subjected them to mentally and emotionally distressing threats and harassment.  He referred to himself as their "god" and said he would terminate them if they did not do as he instructed.  ¶ 14. Plaintiffs allege that Cooper sought to falsify the grades because the past/fail rate of the student body impacted the school's ability to remain open and under contract.  ¶ 20.

Plaintiffs Gonzalez and Dixon allege that they voiced their concerns and objections to Valerie King-Thompson, who was the night or evening supervisor.  Nothing was done, and they resigned their jobs.  Caldwell voiced her concerns to Mr. Cooper and the Center Director, Chamica Brown.  Caldwell was fired three days later.  ¶¶ 15-20.

**Section 1981 Retaliation**

Plaintiffs allege that Defendants violated their rights protected by 42 U.S.C. § 1981(a) and (b).  The allege that Defendants "specifically (violated) their right to enjoy and enforce their contract of employment" and "to be free to perform their job duties professionally,

legally and ethically," and to be "free from retaliation and harassment for voicing their concerns."  ¶ 28.  Defendants argue that Plaintiffs have not alleged that they suffered from any form of race-based discrimination that is protected by Section 1981. Plaintiffs respond that they have a viable claim for retaliation under Section 1981.

Section 1981(a) provides that all persons shall have the same right "to make and enforce contracts ... as is enjoyed by white citizens ... ."  The Supreme Court interpreted the phrase "make and enforce contracts" narrowly and held  that it did not apply to any conduct by an employer after the contractual relation was established.  In response, Congress amended the statute in 1991 to add subsection (b) and clarify that "make and enforce contracts" includes making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. The Supreme Court later recognized that the amended statute encompasses retaliation claims. CBOCS West, Inc. v. Humphries, 128 S.Ct. 1951 (2008).

Defendants argue in their motion that the Amended Complaint contains no allegation that Plaintiffs were fired or mistreated because of their race.  Plaintiffs respond that their claim, "though not based on race," is protected under Section 1981 because they were contractual employees who were obligated to uphold state law.  They point to Foley v. University of Houston System, 355 F.3d 333 (5th Cir. 2003), a case which recognized a Section 1981 retaliation claim before Humphries settled the issue.  Neither Foley, Humphries, nor any other Section 1981 case gives rise to a free-standing claim of "retaliation" in response to general complaints to an employer.  Those cases recognize a

cause of action for retaliation in response to the assertion of rights protected under Section 1981. A key element of a retaliation claim under the statute is that "the plaintiff engaged in activities protected by § 1981," followed by an adverse employment action that was causally connected. Foley, 355 F.3d at 339. See also Willis v. Cleco Corp., 749 F.3d 314, 317 (5th Cir. 2014) (prima facie case of retaliation requires showing of engagement in activity protected by the statute).

Plaintiffs have not alleged that they complained of racial discrimination in connection with their contract or that of any co-workers. Absent any allegation that Plaintiffs asserted or exercised any rights protected by Section 1981, there is no basis for a retaliation claim under the statute. All claims made pursuant to Section 1981 should be dismissed for failure to state a claim on which relief may be granted.

**Louisiana Whistleblower Statute**

Plaintiffs allege in paragraph 29 of their Amended Complaint that they were terminated in violation of the Louisiana Whistleblower statute, La. R.S. 23:967. The statute provides as follows:

> A. *An employer* shall not take reprisal against an employee who in good faith, and *after advising the employer of the violation of law*:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
> (3) *Objects to or refuses to participate in an employment act or practice that is in violation of law*. (Emphasis added.)

Plaintiffs allege in paragraph 30 of their Amended Complaint that they each advised Defendants that the intentional changing of grades and falsification of documents were in violation of state policy, and each of them objected to participating.  Plaintiffs state that, in response, they were verbally degraded, threatened with loss of employment, and "effectively terminated for refusing to engage in activities specifically prohibited under state law."

Defendants first argue that claims under Section 967 lie only against an "employer" and not a mere supervisor or co-worker such as Guy Cooper.  Plaintiffs concede that Cooper "would not qualify as an employer pursuant to the statute" but argue that his corporate employers are vicariously liable for his actions.  In any event, Plaintiffs concede that Guy Cooper is not directly liable under the statute, so all claims Section 967 against him should be dismissed.  See Richardson v. Axion Logistics, L.L.C., __ F.3rd __, 2015 WL 893046,*2 (5th Cir. 2015) ("To state a claim, Richardson first had to allege that Axion, rather than simply its employees, violated state law.")  Plaintiff has not asserted any other claims against Cooper, so he may be dismissed from this case.

Defendants next argue that the claims must fail because Plaintiffs have not identified any actual violation of state law.  Plaintiffs alleged in paragraph 13 of the Amended Complaint that they were charged with correctly reporting grades in accordance with guidelines set by the school board, a state elementary board, and Title 28 of the Louisiana Administrative Code.  Plaintiffs also made reference in paragraph 28 to Defendants violating state law found in Title 28 that prohibits a principal or other staff member from attempting to influence or alter the grade received by a student from his or her teacher.  After Plaintiffs

pointed to these allegations in their memorandum, Defendants filed a reply and accused them of identifying a specific law for the first time.  A review of the Amended Complaint, however, shows that Plaintiffs made reasonable reference to the regulation in their pleading.

Plaintiffs' citation may have been a bit off, as the regulation they refer to is actually found in the Louisiana Administrative Code Title 28, Part XXXIX, Bulletin 1566 (Pupil Progression Policies and Procedures), Section 501(c).  It states: "No school board member, school superintendent, assistant superintendent, principal, guidance counselor, other teacher, or other administrative staff members of the school or the central staff of the parish or city school board shall attempt, directly or indirectly, to influence, alter, or otherwise affect the grade received by a student from his/her teacher."  Defendants argue the regulation is not applicable to them because they are private entities and the regulation is directed at Louisiana school boards.

The language of the regulation, however, goes beyond school boards and speaks to principals, other teachers, and administrative staff members of a school.  And Plaintiffs allege in paragraph 11 of the Amended Complaint, however, that the "Ombudsman location is a public school entity."  There is a plausible basis presented in the Amended Complaint that Guy Cooper was subject to the regulation so that the employer-defendants could not retaliate against the teachers who objected to or refused to participate in his demands to change grades.  A more detailed examination of the relationship between the corporate defendants and the public school system, as well as the scope of the lengthy and detailed administrative regulations, is required to fully assess this issue.  Plaintiffs have offered

enough to withstand pleadings review; Defendants will have to offer more than their summary insistence that the regulation is inapplicable to achieve dismissal of this claim.

Defendants also argue that, even if the regulation is applicable, Plaintiffs' claim must fail because Plaintiffs do not allege that they disclosed or threatened to disclose an actual violation.  Such a disclosure is not all that Section 967 protects.  It also makes it unlawful for an employer to take a reprisal against an employee who advises an employer of a violation of law and objects to or refuses to participate in an act or practice that is in violation of law.  Plaintiffs allege that they "complained and informed supervisors of Mr. Cooper's behavior, but no formal action was ever taken."  Amended Complaint, ¶ 16.  They also allege that they voiced their concerns to an evening supervisor and the Center director.  ¶ 17.  These allegations make out a plausible claim that Plaintiffs were retaliated against because they advised the employer of a violation of law and then objected to or refused to participate in a practice that was in violation of the law.  Defendants are not entitled to dismissal of the whistleblower claim.

**Due Process Claims**

Plaintiffs allege in paragraph 31 of their Amended Complaint that they were deprived of due process, specifically the right to voice their concerns and receive a thorough investigation, as permitted under their contract of employment.  Plaintiffs refer to Section 515 of the administrative provisions cited above.  That regulation provides: "Due process procedures for teachers, students, and parents shall be specified in each local Pupil Progression Plan as related to student placement."  Plaintiffs do not explain in their Amended

Complaint or their briefing what provision of any such Progression Plan was violated in this case or how it applied to and benefitted them.  Plaintiffs' vague allegation of a due process violation based upon an unspecified provision of a Pupil Progression Plan is not sufficient to present a plausible due process claim under state or federal law.  Because Plaintiffs have not identified the basis for a viable due process claim, the court need not address whether the referenced Progression Plan provisions would be applicable to the private corporate defendants.

Accordingly,

**IT IS RECOMMENDED** that Defendants' **Motion to Dismiss (Doc. 23)** be **granted** (1) by dismissing all claims against Guy Cooper and (2) by dismissing Plaintiffs' claims for violations of due process and 42 U.S.C. § 1981.   It is recommended that the motion be **denied** in all other respects. The only remaining claim is pursuant to La. R.S. 23:967 against Ombudsman Educational Services, Ltd. and Educational Services of America.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of April, 2015.

Mark L. Hornsby
U.S. Magistrate Judge